IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LYNN CHAMPAGNE-FEE,

     Plaintiff,

v.

ST. VINCENT GENERAL HOSPITAL DISTRICT, and
BOARD OF DIRECTORS OF ST. VINCENT GENERAL HOSPITAL DISTRICT,

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiff Lynn Champagne-Fee, by and through her attorneys, Robinson & Henry, P.C., and submits the following Complaint and Jury Demand:

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action against Defendants St. Vincent General Hospital District and the Board of Directors of St. Vincent General Hospital District to remedy discrimination and retaliation in her former District employment in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.,* as amended, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended, and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401, *et seq*., as amended. Further, Plaintiff brings this action to seek applicable state-law contract remedies against Defendants for breach of implied contract, or in the alternative, on a claim of promissory estoppel.

2.    By this Complaint, Plaintiff challenges her March 2022 termination from employment with Defendant St. Vincent General Hospital District as illegal age and/or sex discrimination, in retaliation for her protected opposition to what she in good faith and reasonably

believed to be illegal age and sex discrimination,  and in breach of Defendants' implied contractual obligations under their generally applicable written policies applicable to and in effect during Plaintiff's District employment or otherwise contrary to promises contained therein that Plaintiff detrimentally relied on and therefore gives rise to a claim of promissory estoppel.

3. Plaintiff seeks an order awarding her back- and front-pay and benefits, economic and non-economic compensatory and consequential damages, liquidated damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees, costs, expenses, and disbursements.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked over Plaintiff's ADEA and Title VII claims pursuant to 28 U.S.C. §§ 1331 & 1343, 29 U.S.C. § 626(b) & (c), and 42 U.S.C. § 2000e-5(f)(3).

5. Plaintiff's state-law claims arise from the same or substantially the same facts and circumstances as claimed under the ADEA and Title VII. Thus, the supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367.

6. Defendants are subject to the jurisdiction of this Court because each reside in Colorado and, also, Plaintiff's claims against them arise from their transaction of business within Colorado.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because: (a) all parties to this action reside and/or have their principal place of business and office in the District of Colorado; (2) all or a substantial part of the events or omissions underlying Plaintiff's claims occurred in the District of Colorado; and (3) the employment records relevant to such events or omissions are maintained and administered, and

Plaintiff would have worked within but for those events or omissions, within the District of Colorado.

8.      This action is authorized and instituted pursuant to 29 U.S.C. § 626(b) & (c), 42 U.S.C. § 2000e-5(f), (g), & (k), and Colo. Rev. Stat. §§ 24-34-405.

9.      The Colorado Governmental Immunity Act ("CGIA"), Colo Rev. Stat. § 24-10-101 *et seq.*, does not apply to the state-law claims asserted herein. *See, e.g., Elder v. Williams,* 477 P.3d 694, 699 (Colo. 2020); *Board of County Comm'rs v. DeLozier*, 917 P.2d 714, 717 (Colo. 1996).

## GENERAL ALLEGATIONS

### The Parties

10.     Plaintiff Lynn Champagne-Fee is a current resident of the City of Leadville in Lake County, Colorado.  Plaintiff resided there during her District employment.

11.     Plaintiff is a female with a date of birth of October 10, 1955.

12.     Defendant St. Vincent General Hospital District (the "District"), at all times relevant to the allegations in this Complaint, has been a duly organized Colorado special district and political subdivision under and pursuant to the Special District Act, Colo. Rev. Stat. § 32-1-101 *et seq.*, with its principal business office located at 822 West Fourth Street, Leadville, Colorado 80461.

13.     Defendant Board of Directors of St. Vincent General Hospital District (the "Board"), at all times relevant to the allegations in this Complaint, has been the duly constituted governing body for the District under and pursuant to the Special District Act, Colo. Rev. Stat. § 32-1-101 *et seq.*, with its principal business office located at 822 West Fourth Street, Leadville, Colorado 80461.

14.     At all times relevant to the allegations in this Complaint, the District has been a "health service district" as that term is defined, interpreted, and applied under Colo. Rev. Stat. § 32-1-103(9).

15.     At all times relevant to the allegations in this Complaint, the Board for and on behalf of the District has had the power, and exercised the power, to establish, maintain, or operate, directly or indirectly, public hospitals, convalescent centers, nursing care facilities, intermediate care facilities, emergency facilities, community clinics, or other facilities providing health and personal care services, pursuant to Colo. Rev. Stat. § 32-1-1003(1)(a).

16.     At all times relevant to the allegations in this Complaint, Defendants have established, maintained, and operated a duly licensed Medicare-certified critical access hospital located in Leadville, Colorado under the name St. Vincent Health ("SVH") and, also, the St. Vincent Specialty Clinic that is located on SVH's main hospital campus.

17.     At all times relevant to the allegations in this Complaint, Defendants have been known as and doing business under the names St. Vincent Health and SVH, after having been previously known as and doing business under the name St. Vincent Hospital.

18.     At all times relevant to the allegations in this Complaint, the Board for and on behalf of the District has had the power, and exercised the power, to manage, control, and supervise the business and affairs of the District, SVH, and St. Vincent Specialty Clinic pursuant to Colo. Rev. Stat. § 32-1-1001(1)(h).

19.     At all times relevant to the allegations in this Complaint, the Board for and on behalf of the District has had the power, and exercised the power, to appoint, hire, and retain agents and employees for and on behalf of the District, SVH, and St. Vincent Specialty Clinic pursuant to Colo. Rev. Stat. § 32-1-1001(1)(i), including the District's Chief Executive Officer, Chief

Financial Officer, and clinical and non-clinical staff working at SVH and the St. Vincent Specialty Clinic.

20.     At all times relevant to the allegations in this Complaint, the Board for and on behalf of the District has had the power, and exercised the power, to enter into contracts affecting the affairs of the District, including contracts pertaining to the appointment, hiring, and retaining of agents and employees for and on behalf of the District, SVH, and St. Vincent Specialty Clinic, pursuant to Colo. Rev. Stat. § 32-1-1001(1)(d).

21.     At all times relevant to the allegations in this Complaint, the Board for and on behalf of the District, SVH, and St. Vincent Specialty Clinic employed more than 160 individuals in clinical and non-clinical staff positions working at SVH and/or the St. Vincent Specialty Clinic.

22.     Plaintiff was employed with the District in a full-time, non-clinical staff position working at SVH and/or the St. Vincent Specialty Clinic from on or about October 4, 2021 through her termination from that employment on and effective March 17, 2022.

23.     At all times relevant to the allegations in the Complaint, the Board exercised their powers by and on behalf of the District: (a) to manage, supervise, and control the business and affairs of the District in connection with Plaintiff's District employment; (b) to appoint, hire, and retain Plaintiff as a District employee; and (c) to enter into contracts pertaining to the appointment, hiring, and retaining of Plaintiff as a District employee.

24.     At all times relevant to the allegations in this Complaint, based on information and belief, multiple District officials and/or employees, including management and supervisors of Plaintiff in her District employment, reported to the Board about supervision, direction, and control over the work performed by Plaintiff and other District staff members working for SVH and/or St. Vincent Specialty Clinic and day-to-day employment decisions by the District impacting that staff.

25.     At all times relevant to the allegations in this Complaint, based on information and belief, the Board was responsible for overseeing, implementing, and approving detailed personnel policies applicable to District employees working at SVH and/or St. Vincent Specialty Clinic, including those applicable to Plaintiff in her District employment.

26.     At all times relevant to the allegations in this Complaint, based on information and belief, Defendants jointly shared and coordinated over the terms, conditions and privileges involving the employment of Plaintiff and other District employees working at SVH and/or St. Vincent Specialty Clinic, including training them on and requiring them to comply with their job duties and responsibilities and Defendants' policies and regulations.

27.     At all times relevant to the allegations in this Complaint, based on information and belief, the Board was a key decisionmaker concerning the supervision, direction, and control exercised over the work performed by Plaintiff and other District employees working at SVH and the St. Vincent Specialty Clinic and day-to-day employment decisions by and for the District concerning those employees.

28.     At all times relevant to the allegations in this Complaint, based on information and belief, the Board had the power to exercise, and actually exercised, substantial and significant supervision, direction, and control over the work performed by, and day-to-day employment decisions by and for, the District concerning Plaintiff and other District employees at SVH and the St. Vincent Specialty Clinic.

29.     At all times relevant to the allegations in this Complaint, Plaintiff was an "employee" of the District and the Board as that term is defined, interpreted, and applied under the ADEA, Title VII, the CADA, and Colorado common law.

30.     At all times relevant to the allegations in this Complaint, the District and the Board were each an "employer" of Plaintiff as that term is defined, interpreted, and applied under the ADEA, Title VII, the CADA, and Colorado common law.

31.      At all times relevant to the allegations in this Complaint, the District and the Board each employed Plaintiff as a statutory employer engaged in an "industry affecting commerce" as that phrase and the term "commerce" is defined, interpreted, and applied under the ADEA and Title VII.

32.     At all times relevant to the allegations in this Complaint, Defendants constituted a single employer, or were joint employers, of Plaintiff and other District staff working at SVH and/or St. Vincent Specialty Clinic under and within the meaning of the ADEA, Title VII, the CADA, and Colorado common law.

33.     As alleged herein, Plaintiff's asserted claims arise from or relate to the Board's exercise and/or failure to exercise their powers by and on behalf of the District.

34.     As alleged herein, the Board has the power and capacity to be sued in this Court on Plaintiff's claims and is authorized as a party to the instant lawsuit, pursuant to Colo. Rev. Stat. § 32-1-1001(1)(c).

## Procedural History

35.     On or about April 8, 2022, Plaintiff dual-filed a *pro se* Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), EEOC Charge No. 541-2022-01842 (the "Charge"), that names the District as respondent and alleges claims of discrimination on the basis of Plaintiff's age and sex and for retaliation.

36.     The Charge was dual-filed with the CCRD after its filing with the EEOC, with the EEOC subsequently notifying the District about the dual-filing, providing the District a copy of the Charge, and investigating the Charge on behalf of the CCRD – all pursuant to a work-sharing agreement between the EEOC and CCRD.

37.     On November 10, 2022, Plaintiff received from the EEOC a Notice of Right to Sue on her claims of discrimination and retaliation and which are asserted against Defendants in this action.

38.     As the District's governing body, based on information and belief, the District's receipt of notice of the Charge from the EEOC directly resulted in the Board's prompt notification and awareness of Plaintiff's claims of discrimination and retaliation asserted in this action, participation in the District's preparation of the response to the Charge submitted to the EEOC, and approval of the response as submitted prior to its submission.

39.     Plaintiff has complied with all applicable conditions precedent to the filing of her claims asserted in this action.

**Specific Policies of Defendants Applicable to Plaintiff's District Employment**

40.     In connection with her and during her District employment, Plaintiff was aware of multiple formal and detailed written policies promulgated and published by the District that applied to and governed her District employment.

41.     One such policy is titled "Compliance Program Code of Conduct," with a true and accurate copy thereof attached as **Exhibit A.**

42.     The Compliance Program Code of Conduct policy states and mandates that the District will "[h]ire, train, promote and compensate employees without regard for … gender, … age, … or other classification protected by law."

43.     The Compliance Program Code of Conduct policy states and mandates that Defendants will "[e]ncourage open expression of concerns and use of the problem-solving process."

44.     The Compliance Program Code of Conduct policy states and mandates that the District will "[p]rotect an employee's job status, working conditions or employment relationship if he/she, in good faith, reports problems to their supervisor or contacts the Compliance Officer."

45.     Another such policy is titled "Anti-Harassment," with a true and accurate copy thereof attached as **Exhibit B**.

46.     The Anti-Harassment policy states and mandates that the District "prohibits retaliation (taking a negative action) against any employee, by another employee, including supervisors and managers, *because the employee reported, threatened to report*" or "*opposed unlawful harassment*."

47.     The Anti-Harassment policy states and mandates that if the District "substantiates a report of harassment or retaliation, it will take remedial action against the accused commensurate with the circumstances" and, also, "may be taken to deter any possible future harassment or retaliation."

48.     The Anti-Harassment policy states and mandates that if "[a]ny employee, including a supervisor, manager, director or officer, who is found to have engaged in unlawful harassment or retaliation is subject to disciplinary action up to and including discharge from employment."

49.     The Compliance Program Code of Conduct and Anti-Harassment policies do not contain therein any statement denying the intent of the District or the Board, by either policy, to limit the right of either the District or the Board to terminate or discharge District employees.

50.     The Compliance Program Code of Conduct and Anti-Harassment policies, based on information and belief, were promulgated by the District with oversight, implementation, and/or approval by the Board.

51.     At all relevant times to the allegations within this Complaint, Plaintiff justifiably understood and agreed that Defendants would be bound to the mandatory terms and/or promises set forth in the Compliance Program Code of Conduct and Anti-Harassment policies governing the terms and conditions of Plaintiff's District employment.

52.     Plaintiff implicitly agreed to what is reasonably understood to be Defendants' offer to all District employees for Defendants to be bound by the mandatory terms and/or promises set forth in the Compliance Program Code of Conduct and Anti-Harassment policies, with respect to the terms and conditions of District employment, by Plaintiff's initial and continued District employment.

### Plaintiff's Work Performance

53.     The District's Chief Financial Officer at the time, who was a female, hired Plaintiff for the District to perform billing and collections work for the District.

54.     Following the start of Plaintiff's District employment, District management asked Plaintiff, and Plaintiff agreed, to learn and perform other duties for and on behalf of the Defendants, primarily admissions work for the St. Vincent Specialty Clinic.

55.     Plaintiff performed professionally and properly in and throughout her District employment.

56.     Plaintiff met or exceeded all legitimate performance expectations of Defendants for and in her District employment.

57.     Plaintiff never refused to obey legitimate directives from her supervisor(s) in her District employment.

58.     Plaintiff was never disciplined or otherwise counselled by District management regarding her work performance in and prior to the termination of her District employment.

## Termination of Plaintiff's Employment

59.     In or about February 2022, Defendants hired as the District's Chief Financial Officer ("CFO") Allan Scroggins, a male who replaced the previous female District CFO.

60.     On March 7, 2022, Annette Mascarenaz, who had recently been promoted to the position of District Patient Access Manager, sent Plaintiff an email providing direction to Plaintiff regarding staffing the SVH new hospital's front desk based on the requirements of the District's third-party collections agency, Wakefield & Associates, that Plaintiff would be subsequently notified of the dates/hours of the lunches Ms. Mascarenaz was going to have Plaintiff cover.

61.     Subsequently, Plaintiff came to learn that Ms. Mascarenaz was directing her to cover lunches at the SVH new hospital's front desk on Fridays.

62.     At the time, with the approval of District Chief Workforce Officer ("CWO") Pete Reid and the St. Vincent Specialty Clinic Director, Plaintiff was already scheduled to at least 40 hours at the St. Vincent Specialty Clinic, working ten-hour shifts Mondays through Thursdays, as well as regularly making herself available to cover at the Clinic on Saturdays.

63.     Plaintiff was not aware that Ms. Mascarenaz was her supervisor and whom Plaintiff needed to report to regarding her work for the District until, on or about March 10, 2022, District Chief Workforce ("CWO") Pete Reid informed Plaintiff that Ms. Mascarenaz was now one of Plaintiff's supervisors in her District employment alongside CWO Reid.

64.     CWO Reid advised Plaintiff, at the same time, that Ms. Mascarenaz was seeking to have Plaintiff perform as much work as possible staffing the SVH new hospital's front desk, at the expense of Plaintiff performing work for the St. Vincent Specialty Clinic, because Plaintiff's knowledge and experience was needed at the new hospital's front desk, and also, that Plaintiff was no longer assigned to perform billing and collections work for the District.

65.     On or about March 15, 2022, Plaintiff emailed Ms. Mascarenaz advising her that if Plaintiff was being directed to work on Fridays, Plaintiff proposed and was willing going forward to be scheduled to work 8-hour daily work shifts from 7am to 2:30pm in her District employment rather than working the four 10-hour shifts, Monday through Thursday, that she had been working up to that point.

66.     On or about the morning of March 16, 2022, in reference to Plaintiff's email to Ms. Ms. Mascarenaz from the prior day about changing her schedule, CFO Scroggins emailed Plaintiff that:

> I need you to understand that the needs of St. Vincent are fluid and constantly changing. I need to know if you are on board with us a team player. This means that your hours may change and that we will need you to be flexible to accommodate our changes in scheduling. If there is a problem, let's discuss immediately.

67.     At the time, there was no reasonable basis in objective fact for CFO Scroggins to imply by his email that Plaintiff was not acting like a "team player" and not being "flexible to accommodate our changes in scheduling."

68.     Later that day, in a meeting with CFO Scroggins and Ms. Mascarenaz held in CFO Scroggins' office, Plaintiff further explained her email from the prior day, considering CFO Scroggins claimed at the start of the meeting to be "puzzled" by its content, by explaining, in sum and substance, that she was being directed to work on Fridays despite already working 40 hours

by working ten (10) hour shifts Monday through Thursday each week, which is what led to her proposal.

69.     Towards the beginning of the March 16th meeting, Plaintiff specifically advised CFO Scroggins and Ms. Mascarenaz that she was "more than willing to accommodate" the need of the District to have her perform work for SVH and the District on Fridays, and work the hours they required her to work, but explained in a respectful but firm tone, in sum and substance, that from her perspective and based on her District work experience to-date, there was no legitimate need for having any coverage at the St. Vincent Specialty Clinic after 3pm if she was coming in to work that day.

70.     CFO Scroggins subsequently within the March 16th meeting stated, "Bottom-line is we need you to be flexible to the changes that are happening in the hospital.  If you can't, then there are no hard feelings, but you can move on."

71.     At this time, there was no reasonable basis in objective fact for CFO Scroggins to state that Plaintiff was not being "flexible to the changes that are happening in the hospital."

72.     CFO Scroggins in the March 16th meeting further subsequently stated, "We need everyone to be a team player. I'd understand if you were young and had kids and couldn't do it."

73.     CFO Scroggins, Ms. Mascarenaz, and Defendants knew at the time that Plaintiff was a female employee over typical retirement age who did not have any children at the time who lived with or otherwise dependent on her,

74.     In the March 16th meeting, Plaintiff noted that she was enrolled in Medicare.

75.     CFO Scroggins' and Ms. Mascarenaz's remarks within the March 16th meeting reasonably reflected to Plaintiff, at the time, that they each were considering and made determinative in their decision-making around that time, with respect to the terms and conditions

of Plaintiff's District employment, that Plaintiff was an older female worker without children who lived with or were otherwise dependent on her.

76.     CFO Scroggins' and Ms. Mascarenaz's remarks within the March 16th meeting reasonably reflected to Plaintiff, at the time, that in their decision-making around that time, with respect to the terms and conditions of Plaintiff's District employment, they each treated Plaintiff differently from similarly situated younger female District employees and/or those District employees with children who live with or were otherwise dependent on them.

77.     CFO Scroggins' and Ms. Mascarenaz's remarks in the March 16th meeting reasonable reflected to Plaintiff, at the time, that they were engaging in and rendering determinative in their decision-making time, with respect to the terms and conditions of Plaintiff's District employment, age and/or sex stereotyping and/or biased assumptions about older female workers without children who live with or are otherwise dependent on them.

78.     Despite being justly indignant about the discriminatory reasoning articulated by CFO Scroggins and Ms. Mascarenaz within the March 16th meeting, Plaintiff stated subsequently within the meeting that she was "more than willing" to "accommodate everyone" with respect to her work hours in District employment.

79.     Within the March 16th meeting, Plaintiff addressed to CFO Scroggins and Ms. Mascarenaz that she, in sum and substance, believed that by their and Defendants' actions, statements, and treatment of Plaintiff and as compared to other younger female District employees, she was being subjected to discriminatory treatment.

80.     Plaintiff specifically asserted within the March 16th meeting that certain actions of and certain treatment of her by CFO Scroggins, Ms. Mascarenaz, and/or the District since she

started in District employment constituted "discrimination," "age discrimination," and a "hostile work environment" that she had been subjected to "since day one."

81.     Plaintiff reasonably and in good faith believed within the March 16th meeting, when she addressed her claims of discrimination to CFO Scroggins and Ms. Mascarenaz, that she was opposing illegal age and/or sex discrimination.

82.     Plaintiff's addressal of her claims of discrimination to CFO Scroggins and Ms. Mascarenaz within the March 16th meeting constitutes "protected activity" within the meaning of and as that term is applied under the ADEA, Title VII, and the CADA.

83.     Plaintiff's addressal of her claims of discrimination and reporting of other problems to CFO Scroggins and Ms. Mascarenaz with the March 16th meeting constitutes activity protected from retaliation under the Compliance Program Code of Conduct and the Anti-Harassment policies.

84.     Subsequent to her March 16th meeting with CFO Scroggins and Ms. Mascarenaz, that evening, Plaintiff sent a text message to CWO Reid stating:

> Pete just to give you a heads up.  I am filing a formal complaint against Alan and Annette for age discrimination an [sic] a hostile work environment.  I have undeniable proof.

85.     Plaintiff reasonably and in good faith believed, when she sent her March 16th text message to CWO Reid, that she was opposing illegal age and/or sex discrimination in her District employment.

86.     Plaintiff's March 16th text message to CWO Reid constitutes "protected activity" within the meaning of and as that term is applied under the ADEA, Title VII, and the CADA.

87.     Plaintiff's March 16th text message to CWO Reid constitutes activity protected from retaliation under the Compliance Program Code of Conduct and the Anti-Harassment Policy.

88.     The next day, March 17, 2022, in the early afternoon after Plaintiff worked at the St. Vincent Specialty Clinic that morning, CWO Reid met with Plaintiff and notified her of the termination of her District employment effective immediately.

89.     CWO Reid at that time provided no explanation to Plaintiff of the reasons for the termination of her District employment.

90.     Subsequent to her termination from District employment and following in response to Plaintiff filing her Charge of Discrimination, Defendants through then-District-Chief Executive Officer ("CEO") Brett Antczak justified the termination of Plaintiff's employment to the EEOC by raising false, discriminatory, retaliatory, and/or pretextual justifications.

91.     CEO Antczak claimed to the EEOC that Plaintiff's termination was "based on her refusal to work the hours needed and requested by SVH and her, at minimum, borderline insubordination when she asked to discuss her work schedule," and that, "[i]n short, it was determined that Plaintiff "was not a good fit."

92.     To the contrary, Plaintiff never refused to work hours needed and requested by the District or engaged in an insubordinate manner, including within her March 16th meeting with CFO Scroggins and Ms. Mascarenaz, and on information and belief, there is no reasonable basis in objective fact to support she did.

93.     On information and belief, there is no reasonable basis in objective fact to assert Plaintiff "was not a good fit" in her District employment.

94.     CEO Antczak further claimed to the EEOC that Plaintiff, within the March 16th meeting with CFO Scroggins and Ms. Mascarenaz, "became hostile toward Mr. Scroggins, raising her voice and adopting aggressive body language, including pointing at him."

95.     To the contrary, within the March 16th meeting, Plaintiff did not act in an aggressive manner toward or point her finger at CFO Scroggins and did not yell or scream.

96.     On information and belief, the purported hostility and "aggressive body language" of Plaintiff referenced by CEO Antczak to the EEOC as justification for her termination is in reference to Plaintiff within the March 15th meeting addressing her claims of discrimination within a righteously indignant manner.

97.     Given the foregoing, Defendants' asserted grounds for terminating Plaintiff were and are for reasons other than Plaintiff's failure to perform consistent with her job duties, responsibilities, performance expectations, and/or conditions of employment.

98.     CEO Antczak to the EEOC claimed that CWO Reid, CFO Scroggins, and Ms. Mascarenaz "decided it would be best to part ways with [Plaintiff]" the evening of March 16th and CWO Reid the next day "terminated [Plaintiff's] employment effective the same day."

99.     On information and belief, CWO Reid, CFO Scroggins and Ms. Mascarenaz meaningfully influenced, actively participated in, and/or made the ultimate decision on behalf of Defendants to terminate Plaintiff's District employment.

100.    On information and belief, CFO Scroggins and/or Ms. Mascarenaz were and are the sources of the false, discriminatory, retaliatory, and/or pretextual grounds relied on by Defendants for the termination of Plaintiff's District employment.

101.    On information and belief, following the termination of Plaintiff's District employment, Defendants replaced Plaintiff in that employment with, or had her duties transferred to, an individual approximately thirty (30) years younger than Plaintiff, who was less qualified and/or experienced than Plaintiff to perform those duties.

102.    On information and belief, Defendants' termination of Plaintiff's employment with the District was because of, based on, and in consideration of her sex and/or age.

103.    On information and belief, Defendants' termination of Plaintiff's employment with the District was because of, based on, and in consideration of sex stereotyping, stereotypes about older workers, and/or gender-biased and/or ageist assumptions about Plaintiff as an older female worker with adult children who no longer resided with and depended on her.

104.    On information and belief, CFO Scroggins, Ms. Mascarenaz, and/or CWO Reid harbored retaliatory animus toward Plaintiff for her assertions of discrimination in her District employment, and then acted based on that animus and in bad faith by causing Defendants to terminate Plaintiff's District employment.

105.    Defendants' grounds and reasons for terminating Plaintiff from her District employment were and are false, discriminatory, retaliatory, and/or pretextual.

106.    The termination of Plaintiff's District employment is inconsistent with the mandatory terms and promises contained within the Compliance Program Code of Conduct and Anti-Harassment policies.

107.    As a direct result of the termination of Plaintiff's District employment, Plaintiff has suffered past and probably will suffer future economic/pecuniary losses, consequential losses, special damages, and noneconomic/nonpecuniary harm reasonably expected to have resulted at the time of the breach(es) and/or from the interference, including but not limited to emotional distress, embarrassment, anxiety, frustration, inconvenience, impairment of quality of life, and harm to Plaintiff's reputation.

108.     Defendants through their employees, agents, and/or representatives have actually and/or attempted to aid, abet, compel, coerce and incite the unlawful conduct and the harms Plaintiff was subjected to in her District employment, as stated herein.

109.     On or about August 24, 2022, CEO Antczak resigned from his employment with and service to the District, on information and belief, after and under a threat of termination made by the Board arising from and/or related to Plaintiff's allegations raised within her Charge of Discrimination filed with the EEOC.

110.     On information and belief, on or about August 24, 2022, the Board terminated CFO Scroggins from his employment with and service to the District for reason(s) arising from and/or related to Plaintiff's allegations raised within her Charge of Discrimination filed with the EEOC.

## FIRST CLAIM FOR RELIEF
### (Age Discrimination – Discriminatory Termination in Violation of the ADEA)

111.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

112.     Plaintiff was qualified for her employment with Defendants.

113.     Plaintiff was over forty (40) years of age at the time of Defendants' termination of Plaintiff's employment with Defendants.

114.     The termination of Plaintiff's employment with the Defendants was because of her age, in violation of the ADEA, 29 U.S.C. § 623(a).

115.     Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendants' discriminatory conduct.

116.     Defendants knew or showed reckless disregard for whether their termination of Plaintiff's employment with Defendants constituted age discrimination.

117.     As a result of the discriminatory termination of Plaintiff's employment, Defendants are liable to Plaintiff under the ADEA for economic and non-economic compensatory damages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees, costs, expenses, and disbursements.

## SECOND CLAIM FOR RELIEF
### (Age Discrimination – Discriminatory Termination in Violation of the CADA)

118.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

119.     Plaintiff was qualified for her employment with Defendants.

120.     Plaintiff was over forty (40) years of age at the time of Defendants' termination of Plaintiff's employment with Defendants.

121.     The termination of Plaintiff's employment with the Defendants was because of her age, in violation of the CADA, C.R.S. § 24-34-402(1).

122.     Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendants' discriminatory conduct.

123.     Defendants knew or showed reckless disregard for whether their termination of Plaintiff's employment with Defendants constituted age discrimination.

124.     The termination of Plaintiff's employment with Defendants was malicious and/or done with reckless indifference to Plaintiff's rights.

125.     As a result of the discriminatory termination of Plaintiff's employment, Defendants are liable to Plaintiff under the CADA for economic and non-economic compensatory damages, liquidated damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees, costs, expenses, and disbursements.

## THIRD CLAIM FOR RELIEF
**(Sex Discrimination – Discriminatory Termination in Violation of Title VII)**

126.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

127.    Plaintiff was qualified for her employment with Defendants.

128.    The termination of Plaintiff's employment with the Defendants was based on and/or because of Plaintiff's sex, or Plaintiff's sex was motivating factor in the termination, in violation of Title VII, 42 U.S.C § 2000e-2(a).

129.    Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendants' discriminatory conduct.

130.    Defendants knew or showed reckless disregard for whether their termination of Plaintiff's employment with Defendants constituted sex discrimination.

131.    The termination of Plaintiff's employment with Defendants was malicious and/or done with reckless indifference to Plaintiff's rights.

132.    As a result of the discriminatory termination of Plaintiff's employment, Defendants are liable to Plaintiff under Title VII for economic and non-economic compensatory damages, liquidated damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees, costs, expenses, and disbursements.

## FOURTH CLAIM FOR RELIEF
**(Sex Discrimination – Discriminatory Termination in Violation of the CADA)**

133.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

134.    Plaintiff was qualified for her employment with Defendants.

135.    The termination of Plaintiff's employment with the Defendants was based on and/or because of Plaintiff's sex, or Plaintiff's sex was a motivating factor in the termination, in violation of the CADA, C.R.S. § 24-34-402(1).

136.    Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendants' discriminatory conduct.

137.    Defendants knew or showed reckless disregard for whether their termination of Plaintiff's employment with Defendants constituted sex discrimination.

138.    The termination of Plaintiff's employment with Defendants was malicious and/or done with reckless indifference to Plaintiff's rights.

139.    As a result of the discriminatory termination of Plaintiff's employment, Defendants are liable to Plaintiff under the CADA for economic and non-economic compensatory damages, liquidated damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees, costs, expenses, and disbursements.

### FIFTH CLAIM FOR RELIEF
**(Retaliation – Retaliatory Termination in Violation of the ADEA)**

140.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

141.    Plaintiff was qualified for her employment with Defendants.

142.    Plaintiff engaged in activity protected from retaliation under the ADEA, 29 U.S.C. § 623(d), by addressing her assertions of discrimination to Defendants.

143.    The termination of Plaintiff's employment with Defendants occurred because she engaged in protected activity under and in violation of the ADEA.

144.     Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendants' retaliatory conduct.

145.     Defendants knew or showed reckless disregard for whether their termination of Plaintiff's employment with Defendants constituted retaliation.

146.     The termination of Plaintiff's employment with Defendants was malicious and/or done with reckless indifference to Plaintiff's rights.

147.     As a result of the retaliatory termination of Plaintiff's employment, Defendants are liable to Plaintiff under the ADEA for economic and non-economic compensatory damages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees, costs, expenses, and disbursements.

### SIXTH CLAIM FOR RELIEF
**(Retaliation – Retaliatory Termination in Violation of Title VII)**

148.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

149.     Plaintiff was qualified for her employment with Defendants.

150.     Plaintiff engaged in activity protected from retaliation under Title VII, 42 U.S.C. § 2000e-3(a), by addressing her assertions of discrimination to Defendants.

151.     The termination of Plaintiff's employment with Defendants occurred because she engaged in protected activity under and in violation of Title VII.

152.     Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendants' retaliatory conduct.

153.    Defendants knew or showed reckless disregard for whether their termination of Plaintiff's employment with Defendants constituted retaliation.

154.    The termination of Plaintiff's employment with Defendants was malicious and/or done with reckless indifference to Plaintiff's rights.

155.    As a result of the retaliatory termination of Plaintiff's employment, Defendants are liable to Plaintiff under Title VII for economic and non-economic compensatory damages, liquidated damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees, costs, expenses, and disbursements.

## SEVENTH CLAIM FOR RELIEF
### (Retaliation – Retaliatory Termination in Violation of the CADA)

156.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

157.    Plaintiff was qualified for her employment with Defendants.

158.    Plaintiff engaged in activity protected from retaliation under the CADA, C.R.S. § 24-34-402(1), by addressing her assertions of discrimination to Defendants.

159.    The termination of Plaintiff's employment with Defendants occurred because she engaged in protected activity under and in violation of the CADA.

160.    Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendants' retaliatory conduct.

161.    Defendants knew or showed reckless disregard for whether their termination of Plaintiff's employment with Defendants constituted retaliation.

162.    The termination of Plaintiff's employment with Defendants was malicious and/or done with reckless indifference to Plaintiff's rights.

163.     As a result of the retaliatory termination of Plaintiff's employment, Defendants are liable to Plaintiff under the CADA for economic and non-economic compensatory damages, liquidated damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees, costs, expenses, and disbursements.

## EIGHTH CLAIM FOR RELIEF
### (Breach of Implied Contract)

164.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

165.     As described above, under their policies that governed Plaintiff's District employment, Defendants entered into with Plaintiff one or more implied contracts.

166.     The implied contract(s) provide that Plaintiff would not be subject to illegal discrimination or retaliation negatively impacting the terms and conditions of her District employment.

167.     The implied contract(s) provide that Plaintiff would not be subject to negative action impacting the terms and conditions of her District employment based on, because of, and/or in consideration of Plaintiff having in good faith reported work-related problems to a supervisor in her District employment.

168.     The implied contract(s) provide that Plaintiff would not be subject to negative action impacting the terms and conditions of her District employment based on, because of, and/or in consideration of Plaintiff having reported or threatened to report unlawful harassment.

169.     Defendants terminated Plaintiff's District employment in material breach of their contractual obligations under the implied contract(s) they entered with Plaintiff.

170.    Plaintiff has suffered past and probably will suffer future economic/pecuniary losses, consequential losses, and special damages reasonably expected to have resulted at the time of the breach(es).

171.    Defendants are liable to Plaintiff for all financial/pecuniary losses and out-of-pocket expenses that are a direct and proximate result of the breaches of contract set forth herein, in amounts to be proven at trial, pre- and post-judgment interest, and reasonable attorney's fees, costs, expenses and disbursements.

## NINTH CLAIM FOR RELIEF
### (Promissory Estoppel)

172.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

173.    As described above, under the policies of Defendants that governed Plaintiff's District employment, Defendants promised that Plaintiff would not be subject to illegal discrimination or retaliation negatively impacting the terms and conditions of her District employment.

174.    As described above, under the policies of Defendants that governed Plaintiff's District employment, Defendants promised that Plaintiff would not be subject to negative action impacting the terms and conditions of her District employment based on, because of, and/or in consideration of Plaintiff having in good faith reported work-related problems to a supervisor in her District employment.

175.    As described above, under the policies of Defendants that governed Plaintiff's District employment, Defendants promised that Plaintiff would not be subject to negative action impacting the terms and conditions of her District employment based on, because of, and/or in consideration of Plaintiff having reported or threatened to report unlawful harassment.

176.    Defendants should have reasonably expected that the promise(s) they made Plaintiff under their policies would be considered by the her and other employees to consider the these promises as commitments to be followed.

177.    Plaintiff reasonably relied on the promise(s) of Defendants to her detriment, as described above, when Defendants terminated her District employment.

178.    As a result of Defendants' promise(s) and Plaintiff's reasonable reliance upon them to her detriment, Plaintiff has suffered past and probably will suffer future economic/pecuniary losses, consequential losses, and special damages reasonably expected to have resulted at the time of the breach(es).

179.    To the extent that Defendants' policies that governed Plaintiff's employment are not enforceable on a theory of breach of contract, and in the alternative, Defendants under the doctrine of promissory estoppel are liable to Plaintiff for all financial/pecuniary losses and out-of-pocket expenses that are a direct and proximate result of Defendants' failure to honor their promise(s) to Plaintiff set forth herein, in amounts to be proven at trial, and pre- and post-judgment interest, costs, expenses and disbursements.

180.    Defendants' promise(s) to Plaintiff must be enforced to prevent injustice.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays for an award of all relief requested herein and that this Court enter judgment in her favor and award her all relief as allowed by law, including, but not limited to, the following:

a.    Economic compensatory and consequential damages on all claims allowed by law and in amounts to be determined at trial including, but not limited to, back pay and benefits, front pay and benefits, and all direct and proximate financial losses incurred by Plaintiff;

b.      Non-economic and non-pecuniary compensatory and consequential damages including, but not limited to, damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other categories of noneconomic harm on all claims allowed by law and in amount(s) to be determined at trial;

c.      Liquidated damages on all claims allowed by law and in amount(s) to be determined at trial;

d.      Punitive damages on all claims allowed by law and in amounts to be determined at trial;

e.      Pre-judgment and post-judgment interest at the statutory rate;

f.      Attorney's fees, costs, and expenses; and

g.      Such other or further relief as deemed just, fair, and equitable.

## DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Plaintiff, Lynn Champagne-Fee, respectfully requests a jury trial on all claims stated herein and so triable.

**RESPECTFULLY SUBMITTED** this 1st day of February, 2023.

**ROBINSON & HENRY, P.C.**

By:   *s/ Eric J. Neeper*

Eric J. Neeper, Esq.
ROBINSON & HENRY, P.C.
1805 Shea Center Drive, Suite 180
Highlands Ranch, CO 80129
Tel: (720) 931-5908
eric@robinsonandhenry.com
*Attorneys for Plaintiff*

**Plaintiff's Address:**

P.O. Box 745
Frisco, Colorado 80443